# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANTHONY ABBATIELLO, :
:
Petitioner, :
:
v. : Civil Action No. 21-272-JLH
:
BRIAN EMIG, Warden, and ATTORNEY :
GENERAL OF THE STATE OF :
DELAWARE, :
:
Respondents.[1] :

_____

Anthony Abbatiello.  *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____

## MEMORANDUM OPINION

October 30, 2025
Wilmington, Delaware

---

[1]The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to the case.  *See* Fed. R. Civ. P.  25(d).



Hall, District Judge:

Petitioner Anthony Abbatiello filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, followed by an amended petition ("Petition"). (D.I. 2; D.I. 8-1.) The State filed an Answer, to which Petitioner responded. (D.I. 29; D.I. 34.) On January 12, 2024, the case was reassigned to me. For the reasons below, the Court will deny the Petition.

## I.    BACKGROUND

On May 9, 2015, an intruder rushed into a motel room occupied by Carla Weston, pulled a gun, and demanded money. Weston complied and, after also taking Weston's purse and cellphones, the intruder fled. Weston then ran out of the room, yelling to a nearby crowd that she had been robbed.

As Weston and others pursued the robber, he turned back and fired at least three shots in their direction. He then got into a black Mercedes sport utility vehicle and left the scene. Weston reported that the vehicle had a Delaware license plate number of P/C 19805. Weston also provided a description of the robber and his clothing that was consistent with a motel surveillance video, which captured the robber fleeing Weston's room with the purse and gun and the ensuing chase in the parking lot.

Delaware State Police investigators determined that a Delaware license plate number of P/C 19S056—nearly identical to the number provided by Weston—had been issued to a 2011 black Mercedes sport utility vehicle. The investigators later determined that a man named Bernard Bryant had been given a speeding ticket while driving that vehicle about one-and-a-half hours after Weston was robbed. Phone records showed that there was attempted contact between cellphones linked to [Petitioner] and Bryant on the night before and the morning of the robbery.

Based on Weston's physical description of the robber and the surveillance video, police created a photographic lineup, which included [Petitioner]. Police showed the lineup to Weston who then identified [Petitioner] as the man who robbed her.

> Several days after the robbery, police went to [Petitioner's] residence to conduct a search.  As the police arrived, Petitioner fled the residence and drove off in a vehicle.  Back at [Petitioner's] residence, police collected articles of clothing that were consistent with the clothing worn by the man who robbed Weston.

*Abbatiello v. State*, 170 A.3d 779 (Table) (Del. 2017), *Abbatiello v. State*, No. 386, 2016, 2017 WL 3725063, at *2 (Del. Aug. 29, 2017).

In October 2015, a New Castle County grand jury indicted Petitioner on first degree murder, five counts of possession of a firearm during the commission of a felony ("PFDCF"), first degree reckless endangering, aggravated menacing, home invasion, first degree robbery, second degree conspiracy, possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), leaving the scene of a property damage collision, failure to provide information at the scene of an accident, operation of an unregistered motor vehicle, and unreasonable speed.  (D.I. 30-5 at 14-22.)  The Superior Court severed the PFBPP and PABPP charges upon Petitioner's motion.  (D.I. 30-1 at Entry No. 36.) The remaining charges were tried to a jury.  *See Abbatiello*, 2017 WL 3725063, at *1.  On March 24, 2016, the jury found Petitioner guilty of home invasion, first degree robbery, four counts of PFDCF, first degree reckless endangering, leaving the scene of a property damage collision, operation of an unregistered motor vehicle, unreasonable speed, and first degree attempted assault as a lesser-included offense of first degree attempted murder.  (D.I. 30-1 at Entry No. 42.)  *See id.*  A *nolle prosequi* was entered on one count of PFDCF and the aggravated menacing charge.  (D.I. 30-1 at Entry No. 42.)  After the jury verdict, the Superior Court conducted a bench trial on the previously severed charges and found Petitioner guilty of PFBPP and PABPP.  (D.I. 30-2 at Entry No. 9.)  On July 15, 2016, the Superior Court sentenced Petitioner to 53 years of Level V incarceration, suspended after approximately 46 years and six months for decreasing levels of supervision.  (D.I.

30-4 at 26-35.)  *See Abbatiello*, 2017 WL 3725063, at *1.  Petitioner appealed, and the Delaware

Supreme Court affirmed his convictions and sentence.  *See id.*, at *4.

On April 23, 2018, Petitioner filed a *pro se* motion for postconviction relief under Delaware

Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 30-1 at Entry No. 95.)   The Superior

Court appointed post-conviction counsel on June 5, 2018.  (D.I. 30-1 at Entry No. 104.)  On June

26, 2019, appointed counsel filed a motion to withdraw representation, which the Superior Court

granted on June 27, 2019.  (D.I. 30-1 at Entry Nos. 118, 121.)  Petitioner filed a final amended *pro

se* Rule 61 motion on July 24, 2019.  (D.I. 30-1 at Entry No. 123.)  On April 8, 2020, the Superior

Court denied the amended Rule 61 motion.  *See State v. Abbatiello*, No. 1505015619, 2020 WL

1847477, at *9 (Del. Super. Ct. Apr. 8, 2020.)   The Delaware Supreme Court affirmed that

judgment on December 22, 2020.  *See Abbatiello v. State*, 244 A.3d 682 (Table) (Del. 2020), 2020

WL 7647926, at *6  (Del. Dec. 22. 2020).

Petitioner filed this action on February 24, 2021.  (D.I. 2.)

## II.    LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)

(citation omitted).  Under AEDPA, a federal court may consider a habeas petition filed by a state

prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties

of the United States."  28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and

standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–44 (1999). Section 2254 states, in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)
>> (i) there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844–45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the issues raised in the petition were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, at a time when state procedural law permits consideration on the merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Methods of "fairly presenting" a federal legal claim to a state court include "(a) reliance on pertinent federal cases employing constitutional analysis; (b) reliance on state cases employing constitutional analysis in like fact situations; (c)

assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260–65 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless*, 172 F.3d at 260; *Coleman,* 501 U.S. at 750–51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A

petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence, the petitioner must present new reliable evidence–not presented at trial–that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537–38 (2006); *Sweger v. Chesney*, 294 F.3d 506, 522–24 (3d Cir. 2002).

### C.  Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Under § 2254(d), federal habeas relief may be granted only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1),(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law.

---

[2] A claim has been "adjudicated on the merits" for purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

*See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

### D. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. "Because of the difficulties inherent in making th[is] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citation omitted). Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

The same *Strickland* standard applies to a petitioner's ineffective assistance of appellate counsel claim.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  "[I]t is a well-established principle that counsel decides which issues to pursue on appeal,"[3] and appellate counsel is not required to raise every possible non-frivolous issue.  *See Smith*, 528 U.S. at 272;  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."); *Jones v. Barnes*, 463 U.S. 745 (1983); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (explaining that counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).  As a general rule, when an ineffective assistance of counsel claim is based on appellate counsel's failure to raise an issue on appeal, the deficient performance prong of *Strickland* is satisfied "only when the "ignored issues are clearly stronger than those presented." *Smith*, 528 U.S. at  288.  In order to establish prejudice, a petitioner must demonstrate that the appellate court "would have likely reversed and ordered a remand had the issue been raised on direct appeal."  *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000).

A court can choose to address the prejudice prong before the deficient performance prong, and the court can reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced.  *See Strickland*, 466 U.S. at 698.  If the state court only addresses one prong of the *Strickland* test without addressing the merits of the other prong, and the federal court decides to consider the unaddressed prong, the federal court's review of the unaddressed prong must be de novo.  *See, e.g.,* P*orter v. McCollum,* 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's

---

[3]*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Strickland claim de novo."); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (applying de novo review where state courts did not reach prejudice prong under Strickland).

## III.    DISCUSSION

Petitioner presents his claims as follows:[4] (1)(a) the State engaged in prosecutorial misconduct by not correcting false testimony presented by its expert witness for cell phone and cell tower analysis; (1)(b) appellate counsel provided ineffective assistance by failing to raise the prosecutorial misconduct/false testimony issue on direct appeal; (2) the State engaged in prosecutorial misconduct by proffering false cell phone records; (3) trial counsel provided ineffective assistance by failing to investigate the cell phone records, consult an expert, and impeach the State's cell phone expert; (4) the State violated Petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) by suppressing sections of his cell phone records and misleading the defense; (5) the State violated Petitioner's due process rights and interfered with his Sixth Amendment right to compulsory process by threatening his alibi witnesses with perjury charges; (6) trial counsel provided ineffective assistance by not objecting to the State threatening his alibi witnesses with perjury charges; (7) the State violated *Brady* by suppressing witness Nicolas Jamison's New Jersey criminal history record; (8) the State engaged in prosecutorial misconduct by not correcting Jamison's false testimony about his criminal history; (9) trial counsel performed deficiently when questioning witnesses about Petitioner's tattoos; (10)(a) the State engaged in prosecutorial misconduct by not correcting Detective Paul Doherty's testimony; (10)(b) appellate counsel provided ineffective assistance by failing to raise on direct appeal the issue of prosecutorial misconduct concerning Detective Doherty's testimony; (11) trial counsel provided

---

[4]Petitioner has included two ineffective assistance of appellate claims ("IAAC") as sub-arguments in Claims One and Ten.  For ease of analysis, the Court considers the IAAC claims separately.

ineffective assistance by not investigating Weston's illegal activities; (12) trial counsel provided ineffective assistance by providing the defense investigator's statement to the State; (13) trial counsel provided ineffective assistance by failing to cross-examine Detective Doherty and Trooper Peter Irwin about Petitioner's traffic offenses; and (14) cumulative errors compromised his right to due process.

**A. Claim Five:  Prosecutorial Misconduct/Interference with Compulsory Process**

At the beginning of trial, Petitioner's trial counsel informed the trial court that the defense intended to call three witnesses in addition to Petitioner.  (D.I. 30-7 at 22.)  During the second day of trial, the relevant exchange occurred at sidebar and outside the presence of the jury:

| | |
|---|---|
| STATE: | Your Honor may we approach at sidebar? |
| COURT: | Yes |
| STATE: | I guess we are not on the record. |
| COURT: | We are on the record.  We will be on the record sidebar.  Is there a reason we need to do it at sidebar, as opposed to here? Are there privacy concerns? |
| STATE: | Yes, Your Honor.  We would like to go to sidebar, given the nature of the information |

*                    *                    *

(Sidebar conference)

| | |
|---|---|
| STATE: | Your Honor, we have just informed [Petitioner's trial counsel] that we have this witness, who is ready, willing, and able to testify. |
| | Long story short, the most important thing, from [trial counsel's] point of view, is it opens up his alibi witnesses to perjury charges, which he now has to address with them.  They may need counsel that, you know, if they get on the stand they could commit a felony, and/or several felonies, in fact. |
| | This witness is a podmate of [Petitioner]. |

11

> He has been interviewed by an investigator at my office, as well as another deputy.
>
> He knows details that were not provided in any discovery that could only have come from [Petitioner].
>
> So, given the corroboration, the State is willing and planning to put him on the stand.
>
> That being said, we are still going to give [trial counsel's] client a chance.  It is a revised plea.  It is more serious than the last one that was offered, for obvious reasons; but, given the new information, the information for alibi witnesses, we are willing to give him an opportunity to consider it.  And I think [trial counsel] would like some time to talk to his client about that, as well as to try to, obviously, talk to the witnesses before they get on the stand.

(D.I. 30-7 at 89–90)

Following the lunch break that day, trial counsel provided the following information to the Superior Court: (1) the State informed trial counsel about the testimony Petitioner's podmate – Jamison – would provide if called as a witness; (2) trial counsel shared the information about Jamison's "core testimony" with Petitioner; (3) trial counsel advised Petitioner that having Jamison testify would not help the defense; (4) trial counsel strongly advised Petitioner to take the plea offer, but Petitioner rejected that advice; (5) trial counsel conferred with the three alibi witnesses Petitioner wanted to testify during his trial, and shared that Jamison intended to testify that Petitioner manufactured alibi witnesses; (6) trial counsel informed the witnesses that the State did not think the alibi witnesses were being candid with their testimony and, depending on the outcome of the trial, the witnesses risked being charged with perjury; and (7) two of the three alibi witnesses decided not to testify, but Petitioner's brother said he will testify.  (D.I. 30-7 at 92.) Thereafter,

> [Jamison] testified that [Petitioner] admitted to him that he had robbed a woman at the motel. [Jamison] said that [Petitioner] also confessed to having a gun and firing it three times at a pursuing male but that he planned to call alibi witnesses.
>
> [Petitioner] did in fact call two alibi witnesses, both of whom placed [Petitioner] in Philadelphia at the time of the robbery. [Petitioner] also testified that he was in Philadelphia on the day in question.

*Abbatiello*, 2017 WL 3725063, at *2.

In Claim Five, Petitioner contends that the State interfered with his Sixth Amendment right to compulsory process and violated his due process right to a fair trial by threatening three of his alibi witnesses with perjury charges in order to silence them. (D.I. 2 at 37–38; D.I. 8-1 at 37–38.) The Delaware Supreme Court rejected the argument as meritless on direct appeal, concluding that the State's comments were a "permissible warning." *Abbatiello*, 2017 WL 3725063, at *2. Thus, Petitioner is only entitled to relief if the Delaware Supreme Court's reason for denying Claim Five was either contrary to, or an unreasonable application of, clearly established federal law or resulted from an unreasonable determination of the facts in light of the evidence presented.

The Sixth Amendment guarantees a defendant's "right … to have compulsory process for obtaining witnesses in his favor." U.S. Const., amend. VI. In addition, an accused's "right to present his own witnesses to establish a defense … is a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "Substantial [g]overnment interference with a defense witness' free and unhampered choice to testify violates" a defendant's Fourteenth Amendment right to due process and his Sixth Amendment right to compulsory process. *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir. 1997); *see Webb v. Texas*, 409 U.S. 95, 95–97 (1972); *Lambert v. Blackwell*, 387 F.3d 210, 260 (3d Cir. 2004); *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992) ("The Compulsory Process clause protects the presentation of

the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge."). The government's conduct constitutes "substantial interference" when "the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005); *see United States v. Girod*, 646 F.3d 304, 312 (5th Cir. 2011) ("[T]here must be evidence of threats or intimidation."). Whether substantial government interference occurred is a factual determination. *See Lambert*, 387 F.3d at 260.

"[T]he Sixth Amendment is not implicated every time a prosecutor or trial court offers advice regarding the penalties of perjury." *United States v. Davis*, 974 F.2d 182, 187 (D.C. Cir. 1992). Indeed, "warning a witness about the consequences of committing perjury is, in many cases, warranted, and does not amount to substantial interference with the right to testify." *Holland v. Pierce*, 109 F. Supp. 3d 636, 645 (D. Del. 2015). An inference that the prosecutor has coerced a witness into silence only arises where "the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate." *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995).

On direct appeal, the Delaware Supreme Court rejected Petitioner's contention that the State violated his due process and compulsory process rights, explaining that the State's comments "merely notif[ied] the trial court and defense counsel that it had its own witness whose testimony would contradict [Petitioner's] alibi witnesses." *Abbatiello*, 2017 WL 3725063, at *2. After characterizing the State's comments as a "permissible warning," the Delaware Supreme Court held that the State's comments did not amount to "substantial interference" and were not intended to "coerce [Petitioner's] witnesses into silence. *Id*.

14

Having reviewed the transcript of the sidebar conference that occurred on the second day of Petitioner's trial, and given Petitioner's failure to provide evidence of any other relevant comments made by the State, the Court concludes that the Delaware Supreme Court reasonably determined the facts when holding that the State's conduct did not amount to substantial governmental interference. For starters, rather than discussing the issue of perjury in open court, the State asked for a sidebar. The State did not assert that perjury prosecutions were definitively forthcoming. The State had no direct communication with Petitioner's alibi witnesses, because the State's warnings about potential perjury were filtered through trial counsel. The record shows that the State properly expressed a legitimate concern that the witnesses' testimony could subject them to prosecution, and its reference to perjury did not come in the form of a threat or intimidation.

In addition, the Delaware Supreme Court correctly identified and reasonably applied federal law in holding that the State's actions did not violate Petitioner's rights to due process and compulsory process. Accordingly, the Court will deny Claim Five.

### B. Claims One (b), Three, Six, Nine, Ten (b), Eleven, Twelve, Thirteen: Ineffective Assistance of Trial and Appellate Counsel

Claims Three, Six, Nine, Eleven, Twelve, and Thirteen allege that trial counsel provided ineffective assistance during Petitioner's trial. Claims One and Ten allege that appellate counsel provided ineffective assistance on direct appeal. The Superior Court denied all eight claims as meritless in its post-conviction decision, and the Delaware Supreme Court affirmed. Accordingly, Petitioner is only entitled to relief if the Delaware state courts' reasons for denying the claims were either contrary to, or an unreasonable application of, clearly established federal law or resulted from an unreasonable determination of the facts in light of the evidence presented.

The Delaware state courts correctly identified *Strickland* as setting forth the standard applicable to Petitioner's ineffective assistance of counsel claims. As for whether the Delaware state courts reasonably applied the *Strickland* standard to the facts of Petitioner's case and made a reasonable determination based on the evidence before it, the Court must view the Delaware state court decisions through a "doubly deferential" lens.[5] *Id.* at 105. When assessing the first prong, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Claim One (b): Appellate Counsel Failed to Present Argument Alleging Prosecutorial Misconduct Relating to Investigator Daly's Testimony

In Claim One (b), Petitioner asserts that appellate counsel failed to argue on direct appeal that the State engaged in prosecutorial misconduct by not correcting Investigator Daly's false testimony about the number of voice calls associated with Petitioner's phone on the day of the robbery. (D.I. 2 at 21–26; D.I. 8-1 at 21–26.)

The following background helps to understand Petitioner's argument. Petitioner's cell phone records showed two calls between cell phone numbers linked to Petitioner and Bryant (the driver of the getaway car) on the night before and the morning of the May 9, 2015 crimes. (D.I. 30-7 at 70.) Investigator Daly testified that Petitioner's phone records reflected that Petitioner was

---

[5] As explained by the U.S. Supreme Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

in Delaware during the time he made the call on the morning of the robbery, but Daly admitted on cross-examination that the records did not show whether Petitioner was in the vicinity of the motel where the robbery had occurred.  (D.I. 30-7 at 73–75.)

The cell phone records of Petitioner's girlfriend, Louise Cuculino, showed several outgoing phone calls to Petitioner's phone on the day of the robbery, but her calls were not reflected in Petitioner's phone records. *See Abbatiello*, 2020 WL 1847477, at *4.  According to Petitioner, (1) Cuculino's call records also showed three incoming calls from Petitioner's phone on the day of the robbery, but those calls were not reflected in Petitioner's phone records; and (2) Daly knew that Cuculino's phone records showed three incoming calls from Petitioner's phone, yet Daly did not include those calls when he testified about the number of calls attributed to Petitioner's phone on the day of the robbery.  (D.I. 8-1 at 23.)  Petitioner contends that the inconsistency between his and Cuculino's phone records shows that Daly falsely testified by stating Petitioner's phone only made two voice calls on the day of the robbery.  (*Id.*)  Relatedly, Petitioner appears to assert that the calls he placed to Cuculino were not on the call logs that were admitted at trial because the records were incomplete or edited.[6]  (D.I. 56 at 6.)

Petitioner presented the same argument in his Rule 61 motion, which the Superior Court rejected:

> Appellate Counsel's decision not to argue prosecutorial misconduct on appeal was reasonable because the trial record did not support such a claim. The record evidence admitted at trial did not show any inconsistency between the phone records because Cuculino's phone records were not authenticated and never were admitted into

---

[6] In his Rule 61 motion, Petitioner asserted an independent claim that the State "suppressed the missing sections of [his] CDR (call details record) which is evidenced by Cuculino's records." (D.I. 30-26 at 12.)  The Superior Court held that "Petitioner failed to show there are missing sections to the call detail record for his phone."  *Abbatiello*, 2020 WL 1847477, at *3.  Petitioner asserts the same suppression argument in Claim Four, discussed later in this Opinion.  *See infra* at Section III.E.

> evidence. The fact that Cuculino's phone records exist does not mean Daly perjured himself or the State committed misconduct by eliciting Daly's testimony regarding [Petitioner's] phone records, which were authenticated and admitted. In short, [Petitioner] fails adequately to allege Appellate Counsel's representation did not meet the objective standard of reasonableness or that the result of the appeal would have been different had Appellate Counsel raised this claim.

*Abbatiello*, 2020 WL 1847477, at *5. The Delaware Supreme Court affirmed that decision, explaining:

> [Petitioner] has failed to show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. Despite his continued assertion that the copies of his cell phone records that the State used at trial were incomplete, [Petitioner] has not produced copies of his own cell phone records that show any missing entries. And, as the Superior Court concluded, the use of his girlfriend's records at trial would have shown, at most, that she attempted to call him during the day. He has not shown how that would have made the jury less likely to decide that he committed the robbery. [Petitioner] therefore has not shown a reasonable probability that the result of the proceeding would have been different, and his claims that his trial counsel provided ineffective assistance relating to the cell phone records and the cell phone expert fail. To the extent that he asserts that his appellate counsel provided ineffective assistance with respect to these issues, that claim similarly fails.

*Abbatiello,* 2020 WL 7647926, at *4.

The Delaware state courts reasonably determined the facts when finding no record support for Petitioner's arguments that his cell phone record admitted during trial was incomplete and that Daly falsely testified about the number of calls associated with Petitioner's cell phone on the day of the robbery. When responding to Petitioner's motion to compel complete cell phone records from the State and T-Mobile during his Rule 61 proceedings, the State explained that it was

> unaware of any suppression from the T-Mobile [call detail records] with respect to calls on May 9, 2015. The information that was entered into evidence, is what the State had. Therefore, the State cannot provide what it does not have.

(D.I. 30-26 at 83.) The Superior Court found Petitioner's "belief that the State altered or held back some portion of those phone records" to be "unsubstantiated," and denied the motion to compel. *State v. Abbatiello*, No. 1505015619, 2020 WL 1881825, at *1 (Del. Super. Ct. Apr. 8, 2020). As noted by the State in Petitioner's Rule 61 appeal, Petitioner could have independently secured copies of his cell phone records to support his allegation of malfeasance on the part of the State. (D.I. 30-28 at 17 n.43.) He chose not to do so. Although Petitioner reasserts the same theory about his incomplete or altered cell phone records in this proceeding, he still has not substantiated that allegation with his records. Given Petitioner's failure to provide evidence to the contrary, the Court defers, as it must, to the Superior Court's factual determination that the phone records admitted during Petitioner were complete.

The Delaware state courts also reasonably determined the facts when finding no record support for Petitioner's contention that Daly falsely testified about the number of calls associated with Petitioner's cell phone on the day of the robbery. To begin with, the scope of Daly's testimony was necessarily limited to Petitioner's cell phone records and could not include information about Cuculino's phone records because Cuculino's records were not admitted into evidence. Petitioner does not challenge the veracity of Daly's testimony about the number of calls reflected on Petitioner's admitted phone records. Therefore, the Delaware state courts reasonably determined the facts by concluding (1) Daly did not falsely testify about the number of calls appearing on Petitioner's phone records; and (2) the State neither presented, nor failed to correct, false evidence.

Given the lack of record support for Petitioner's contention that Daly testified falsely, Petitioner cannot show that the Delaware Supreme Court would have likely reversed and ordered a remand had the issue been raised on direct appeal. Thus, the Delaware state courts reasonably applied *Strickland* in concluding that Petitioner failed to demonstrate prejudice.

But even if Cuculino's cell phone records had been admitted at trial and reflected the incoming and outgoing phone calls in the manner described by Petitioner, those records still would not have established Petitioner's alibi defense that he was in Philadelphia at the time of the robbery. At most, Cuculino's records would have shown a discrepancy with respect to the total number of calls attributed to either phone, which was insufficient to demonstrate that Daly committed perjury and that the State knew his testimony was false. In other words, Petitioner still would not have been able to demonstrate a reasonable possibility that the Delaware Supreme Court would have likely reversed and ordered a remand had the issue been raised on direct appeal.

Because Petitioner cannot satisfy the prejudice prong of *Strickland*, the Court need not address *Strickland*'s performance prong. Thus, the Court will deny Claim One (b).

### 2. Claim Three: Trial Counsel Failed to Investigate Cell Phone Records

In Claim Three, Petitioner argues that trial counsel provided ineffective assistance by "failing to investigate the [call detail records], consult an expert, seek a complete certified record, and impeach the [S]tate's expert." (D.I. 2 at 2; D.I. 8-1 at 2.) Petitioner contends that his "claim is and always was based on the [three] calls from Petitioner's phone to Cuculino's [phone] on [May] 9th," and "[t]he fact that counsel was unaware of the [three] calls that [P]etitioner had placed to Cuculino's phone or that Daly committed perjury is evidence of [counsel's] failure to conduct any type of pre-trial investigation into the cell phone records." (D.I. 8-1 at 32–33.) Petitioner appears to contend that trial counsel should have authenticated Cuculino's phone records in order

to have them admitted which, in turn, would have enabled counsel to impeach Daly and provide support for the defense theory that Petitioner could not have committed the robbery because he was in Philadelphia at the time of the robbery.

Petitioner presented the same argument in his Rule 61 motion. The Superior Court rejected the argument after concluding that Petitioner failed to satisfy the performance prong of *Strickland*, explaining:

> Trial Counsel effectively cross-examined the State's expert witness and elicited testimony beneficial to [Petitioner], namely that [Petitioner's] phone records did not place him within the vicinity of the Fairview Inn at the time of the robbery. Having elicited testimony helpful to [Petitioner], Trial Counsel made the strategic decision not to discredit that witness. Counsel's strategic decisions are afforded substantial deference.

*Abbatiello*, 2020 WL 1847477, at *5. The Delaware Supreme Court affirmed that decision after concluding that Petitioner failed to satisfy the prejudice prong of *Strickland*, opining:

> Pointing to the fact that his girlfriend's cell phone records show calls between her phone and his phone on the day of the robbery, [Petitioner] contends that his counsel somehow could have used the records to demonstrate that [Petitioner] was not in Delaware on the day of the robbery and to otherwise impeach the testimony of the State's expert.
>
> [Petitioner] has failed to show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. Despite his continued assertion that the copies of his cell phone records that the State used at trial were incomplete, [Petitioner] has not produced copies of his own cell phone records that show any missing entries. And, as the Superior Court concluded, the use of his girlfriend's records at trial would have shown, at most, that she attempted to call him during the day. He has not shown how that would have made the jury less likely to decide that he committed the robbery. [Petitioner] therefore has not shown a reasonable probability that the result of the proceeding would have been different, and his claims that his trial counsel

21

> provided ineffective assistance relating to the cell phone records and
> the cell phone expert fail.

*Abbatiello,* 2020 WL 7647926, at *5.

The Delaware state courts did not unreasonably determine the facts because, as discussed above, the record does not support Petitioner's assertion that his cell phone records were incomplete or edited. *See supra* at Section III.B.1. Consequently, Petitioner cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to investigate the details of Petitioner's phone records, consult an expert for an analysis of that record, seek a complete certified record, and/or impeach Daly. Accordingly, the Delaware Supreme Court reasonably applied *Strickland* in concluding that Petitioner failed to demonstrate prejudice.

Because Petitioner cannot satisfy the prejudice prong of *Strickland*, the Court need not address *Strickland*'s performance prong. Thus, the Court will deny Claim Three.

### 3. Claim Six: Trial Counsel Failed to Object to State's Alleged Threats and Failed to Change Strategy Concerning Witnesses

In Claim Six, Petitioner contends trial counsel provided ineffective assistance by failing to object to the State's "threat" about potential perjury charges and by not compelling the potential alibi witnesses to testify. (D.I. 2 at 39–40; D.I. 8-1 at 39–40.) According to Petitioner, the credibility of the two alibi witnesses (Blaise and McPhilemy) who did testify "was extremely questionable" and presenting their testimony without additional alibi witnesses bolstered the State's case. (D.I. 8-1 at 40.)

Petitioner presented a substantially similar argument in his Rule 61 motion. The Superior Court held that trial counsel did not perform deficiently by failing to object to the State's perjury warning because the Delaware Supreme Court had determined on direct appeal that the "State's

22

perjury warning […] was proper under Delaware law" and did not deprive Petitioner of due process. *Abbatiello*, 2020 WL 1847477, at *6. On postconviction appeal, the Delaware Supreme Court referenced its earlier decision that "the State's warnings did not substantially interfere with the witnesses' determination whether to testify," and held that Petitioner was not prejudiced by trial counsel's failure to object to the State's warning. *Abbatiello*, 2020 WL 7647926, at *4.

As discussed above, the Court rejects as meritless Petitioner's argument that the State's warning about potential perjury charges violated his Constitutional rights. *See supra* at Section III.A. Petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for trial counsel's failure to raise a meritless claim. *See Werts*, 228 F.3d at 203. Thus, the Delaware state courts reasonably applied *Strickland* in rejecting Petitioner's argument that trial counsel should have objected to the State's comments about potential perjury charges.

As for Petitioner's contention that trial counsel should have compelled certain alibi witnesses to testify after they were informed about the State's warning, the Delaware Supreme Court viewed the additional witness' testimony as cumulative. The Court must accept as correct the Delaware Supreme Court's factual finding that the additional witness' testimony would have been cumulative, because Petitioner has not provided any clear and convincing evidence to the contrary. The Delaware Supreme Court's factual determination is also supported by the fact that two alibi witnesses did testify on Petitioner's behalf and stated that Petitioner was in Philadelphia at the time of the robbery. Given all these circumstances, the Delaware Supreme Court reasonably applied *Strickland* in holding that trial counsel's failure to compel the other witnesses to testify did not prejudice Petitioner. *See Brown v. Wenerowicz*, 663 F.3d 619, 631 (3d Cir. 2011) ("[I]t was

not unreasonable for the Pennsylvania Superior Court to conclude that there was no prejudice under Strickland because the excluded testimony would have been merely cumulative.").

Accordingly, the Court will deny Claim Six.

### 4. Claim Nine: Trial Counsel Failed to Effectively Examine Witnesses About Petitioner's Tattoos

When Detective Doherty initially interviewed Weston after the robbery, she said that the perpetrator did not have any "distinguishing marks, scars, tattoos, or anything like that." (D.I. 2 at 49; D.I. 8-1 at 49.) A few days later, Weston called Doherty and said that she now recalled the suspect may have had sleeve-style tattoos on his arms. (*Id.*) During Petitioner's trial, Weston described the man who robbed her as white, solid-framed with tattoos "[u]p and down his arms" and wearing a "Kango[l] style hat. (D.I. 30-7 at 33.) On cross-examination, trial counsel asked Weston if, during her initial police interview, she stated the suspect had facial tattoos, and she responded, "I'd say he had tattoos on his arms, I was for sure of that." (D.I. 30-7 at 40.) When cross-examining Doherty, trial counsel asked Doherty about the information Weston relayed to him during a follow up telephone a few days after her initial interview. (D.I. 30-7 at 86.) Doherty stated, "She said since our first interview on the day of the incident, that she recalled that the suspect possibly had sleeve-style tattoos on his arms." (*Id.*)

In Claim Nine, Petitioner contends that trial counsel provided ineffective assistance when questioning Detective Doherty and Weston about Weston's inconsistent description of the perpetrator as having sleeve-style tattoos on his arms. (D.I. 8-1 at 49.) Petitioner alleges that Doherty lied about Weston calling him after the initial interview to provide the additional information about Petitioner's tattoos. (D.I. 2 at 50–51; D.I. 8-1 at 50–51.) Petitioner contends that trial counsel should have questioned "Weston about whether she called Doherty about the tattoos, because regardless of her answer, the record appears to be tampered with," and trial counsel

24

could have used this information to destroy "Doherty's credibility along with the integrity of the State's investigation." (D.I. 2 at 51; D.I. 8-1 at 51.)

Petitioner presented the same argument in his Rule 61 motion. The Superior Court held that trial counsel did not perform deficiently with respect to the tattoo issue, because counsel had "cross-examined Weston regarding at least six inconsistencies, including [Petitioner's] tattoos, and [he] also cross-examined Detective Doherty regarding Weston's initial failure to recall those tattoos." *Abbatiello*, 2020 WL 1847477, at *6. The Delaware Supreme Court "agree[d] with the Superior Court's conclusion that trial counsel's cross-examination of Weston and the detective regarding Weston's description of the robber was objectively reasonable." *Abbatiello*, 2020 WL 7647926, at *4.

Viewing the Delaware Supreme Court's decision under a "doubly deferential" lens, as I must, there is more than a reasonable argument that counsel's performance was not deficient under *Strickland*'s first prong. When cross-examining Doherty, trial counsel elicited Doherty's testimony that Weston did not initially mention tattoo sleeves, but that she called a few days later and said the suspect "possibly had sleeve-style tattoos on his arm." (D.I. 30-7 at 86.) After eliciting this information, trial counsel highlighted the fact that Weston told Doherty she "couldn't be sure" about the tattoos. (*Id.*) This record shows that trial counsel did not overlook the inconsistencies in Weston's description of the perpetrator based on whether or not he had tattoos, and trial counsel's failure to directly ask Weston about her follow-up phone call did not diminish the effect of trial counsel's cross-examination of Doherty on this point. Additionally, trial counsel's cross-examination of Weston and Doherty highlighted other inconsistencies in Weston's description of the suspect, including those related to the suspect's handgun, shorts, hat, and which hand the suspect used to hold the firearm. (D.I. 30-7 at 38–40.)

Petitioner also cannot demonstrate that he was prejudiced by trial counsel's cross-examination of Weston and Doherty regarding Weston's description of the robber.  In addition to Weston's testimony, there was plenty of other evidence linking Petitioner to the crime, including surveillance video, along with the fact that police seized clothing from Petitioner's residence that was consistent with clothing in the surveillance video, phone records showing Petitioner had been in contact with Bryant on the day of the robbery, evidence that Bryant's vehicle was the getaway car, and Petitioner's consciousness of guilt by fleeing his residence when police arrived to conduct a search.  *See Abbatiello*, 2017 WL 3725063, at *3.  In addition, Petitioner's defense was not solely based on attacking the credibility of the State's witnesses; it was also based on Petitioner having an alibi.

Accordingly, the Court will deny Claim Nine.

### 5. Claim Ten (b): Appellate Counsel Failed to Argue Prosecutorial Misconduct in Relation to Detective Doherty's Testimony

In Claim Ten (b), Petitioner contends that appellate counsel provided ineffective assistance by not raising a prosecutorial misconduct claim regarding Detective Doherty's testimony concerning Weston's statements.  (D.I. 2 at 52–-55; D.I. 8-1 at 52–55.)  According to Petitioner, "Weston specifically told [Detective Doherty] on [May] 9th that the suspect did not have tattoos" and that it is implausible that "Weston called [Doherty] out of the clear blue [s]ky solely to tell him about the possibility of tattoos right in the middle of his investigation of his case."  (D.I. 8-1 at 53.)  Petitioner asserts that Doherty "strategically moved sections of his [police] report around which only benefitted him."  (*Id*.)

Petitioner presented the same argument in his Rule 61 motion.  The Superior Court held that Petitioner did not satisfy either prong of the *Strickland* standard because he failed to demonstrate that any false testimony was offered.  *See Abbatiello*, 2020 WL 1847477, at *7.  On

26

postconviction appeal, the Delaware Supreme Court agreed with the Superior Court that this ineffective assistance of appellate counsel claim failed. *See Abbatiello*, 2020 WL 7647926, at *5.

As the Superior Court explained, Doherty's affidavit of probable cause supporting Petitioner's arrest warrant averred that Weston supplemented her original statement by asserting she believed the suspect possibly had sleeve-style tattoos on his forearms. Petitioner's contention that Weston told the police that there were no tattoos is consistent with Doherty's testimony that Weston did not mention tattoo sleeves during her initial interview on May 9. (D.I. 30-7 at 86.) Petitioner's contention that Doherty fabricated his testimony about Weston subsequently calling him to discuss the possibility that the suspect had tattoos and that Doherty strategically structured his police report to create false evidence is unsupported. Therefore, the Superior Court reasonably determined the facts when finding that Petitioner failed "to show that any false testimony was offered." *Abbatiello*, 2020 WL 1847477, at *7.

Since Petitioner's contention regarding Doherty's false testimony is factually baseless, the Delaware state courts reasonably applied *Strickland* in holding that appellate counsel's failure to assert a prosecutorial misconduct claim based on nonexistent false testimony did not amount to constitutionally ineffective assistance. Accordingly, the Court will deny Claim Ten (b).

### 6.  Claim Eleven: Trial Counsel Failed to Investigate Weston's Illegal Activities

In Claim Eleven, Petitioner contends that trial counsel was ineffective for failing to investigate Weston's criminal activity. Petitioner asserts that Weston was engaged in prostitution and drug dealing, and trial counsel could have used evidence of those activities to undermine Weston's credibility and establish that somebody else may have had a motive for robbing her. (D.I. 2 at 56–59; D.I. 8-1 at 56–59.)

The Superior Court rejected Petitioner's contention, explaining:

> First, Trial Counsel did in fact address Weston's alleged illegal activity during cross-examination. Additionally, Jamison testified that [Petitioner] robbed Weston because she was a drug dealer. Fundamentally, however, the issue of *why* someone robbed Weston was not material at trial; the issue at trial was *who* robbed her. Accordingly, the fact that other unnamed persons may have been motivated to rob Weston had no bearing on whether [Petitioner] in fact robbed her. Accordingly, [Petitioner] has not shown there is a reasonable probability that the result at trial would have been different if Trial Counsel had focused more on Weston's alleged criminal activity or other persons' alleged motives to rob her.

*Abbatiello*, 2020 WL 1847477, at 7. The Delaware Supreme Court affirmed that decision, stating, "[w]e conclude that counsel's performance with respect to this issue was not objectively unreasonable, nor has [Petitioner] demonstrated prejudice." *Abbatiello*, 2020 WL 7647926, at *5.

The record demonstrates that trial counsel probed Weston's illegal activities. When cross-examining Detective Doherty, trial counsel asked Doherty if, during his initial interview with Carla Weston on May 9, he had asked Weston if she was selling any drugs out of her unit, and that she had denied doing so. Doherty responded, "Yes." (D.I. 30-7 at 87.) When cross-examining Weston, trial counsel asked why she left a note on her motel room door stating, "Call first. Don't knock on my door." (D.I. 30-7 at 43.) Trial counsel also asked Weston if she was employed at the time of the robbery–to which she responded no–and why she had multiple cell phones. (*Id.*) These questions implied that Weston was supporting herself by selling drugs. Viewing the Delaware Supreme Court's decision under a "doubly deferential" lens, as I must, here is more than a reasonable argument that counsel's performance was not deficient under *Strickland*'s first prong.

The Delaware Supreme Court also reasonably applied *Strickland* in finding Petitioner failed to demonstrate a reasonable probability that the outcome of his trial would have been different if trial counsel had probed more deeply into Weston's illegal activities. The robber's identity was the determinative issue, not the robber's motive.

28

Accordingly, the Court will deny Claim Eleven.

### 7.  Claim Twelve:  Trial Counsel Provided Defense Investigator's Statement to State

In Claim Twelve, Petitioner contends that trial counsel was ineffective for "providing the prosecution with inadmissible memoranda that were used to impeach [his alibi] witnesses." (D.I. 2 at 60; D.I. 8-1 at 60.)  Petitioner's complaint stems from the fact that trial counsel provided the State with reports consisting of prior inconsistent statements Petitioner's alibi witnesses made to trial counsel's investigator.  Petitioner asserts that the investigative reports were "statutorily protected from disclosure" and that the State should not have been permitted to use the reports to impeach the witnesses because "neither witness accepted the substance of the [investigator's] reports as being an accurate description of their conversations." (D.I. 8-1 at 60–61.)

The Superior Court concluded that trial counsel did not perform deficiently by providing the memoranda to the State because they were discoverable under Superior Court Criminal Rule 26.2. *See Abbatiello*, 2020 WL 1847477, at *8.  The Superior Court also determined that Petitioner failed to demonstrate prejudice because the "State's impeachment of [Petitioner's] alibi witnesses consisted of more than the statements at issue, and the credibility of those witnesses was also imperiled by Jamison's testimony, Weston's identification, the physical evidence, and the cell phone records." *Id*.  On postconviction appeal, the Delaware Supreme Court agreed "that [Petitioner] has not shown prejudice regarding the production of the witness statements." *Abbatiello*, 2020 WL 7647926, at *5.

Substantial other evidence linked Petitioner to the crimes, including eyewitness testimony and the victim identifying Petitioner from a police photo lineup; surveillance video depicting the incident, phone records showing that Petitioner had contacted the driver of the getaway car, a Mercedes, before the robbery, vehicle records showing that the Mercedes was the getaway car,

Petitioner's flight from his residence when the police arrived to conduct a search, and the police seizure of clothing that was consistent with that depicted in the surveillance video. *See Abbatiello*, 2017 WL 3725063, at *3. Additionally, Petitioner's prison podmate, Jamison, testified that Petitioner had created a fictitious alibi. Given this evidence, Petitioner cannot demonstrate a reasonable probability that the outcome of his trial would have been different if trial counsel had not provided the memoranda to the State. Therefore, the Delaware Supreme Court reasonably applied *Strickland* in denying Claim Twelve.

Because Petitioner cannot satisfy the prejudice prong of *Strickland*, the Court need not address *Strickland*'s performance prong. Thus, the Court will deny Claim Twelve.

### 8. Claim Thirteen: Trial Counsel Failed to Meaningfully Test Prosecution's Case with Respect to Traffic Offenses

In Claim Thirteen, Petitioner contends that trial counsel was deficient for not cross-examining Detective Doherty and Trooper Irwin about his traffic offenses. (D.I. 2 at 65; D.I. 8-1 at 65.) Petitioner asserts that trial counsel's failure forced Petitioner to testify and accept responsibility for the traffic charges "out of fear" that "counsel was going to lose all credibility with the jury by arguing innocence without challenging the evidence." (D.I. 8-1 at 66.)

The Superior Court rejected Petitioner's contention, explaining:

> Both Trial Counsel and the Court discussed with Petitioner the implications and risks of choosing to testify. [Petitioner] represented to the Court that no one forced him to testify, and that he was making that decision of his own free will. Trial Counsel's strategic decisions in regard to examining Trooper Peter Irwin, Jr. and Detective Doherty regarding the traffic offenses were reasonable and did not force [Petitioner] to testify. Moreover, it was not [Petitioner's] testimony that led to the flight instruction; by the time [Petitioner] testified, the Court already had ruled that the record supported giving the jury an instruction regarding flight. [Petitioner] therefore fails to meet his burden on this claim.

*Abbatiello*, 2020 WL 1847477, at \*9.  The Delaware Supreme Court affirmed that decision, explaining Petitioner could not demonstrate prejudice because the "evidence that [Petitioner] committed the traffic offenses was overwhelming." *Abbatiello*, 2020 WL 7647926, at \*6.  The Delaware Supreme Court also found that Petitioner's "claim that trial counsel's actions somehow forced him to testify or resulted in a flight instruction" was meritless. *Id.*

In his Rule 61 affidavit responding to the allegations in Claim Thirteen, trial counsel explained that he "discussed with [Petitioner] the pros and cons of testifying in his trial." (D.I. 2-1 at 286.)  Trial counsel also explained he believed that "the flight instruction would have been given regardless of whether or not [Petitioner] testified." (*Id.*)  Additionally, before the defense began its case, the trial judge conducted a colloquy with Petitioner about whether he wished to testify.  Petitioner stated he understood his prior criminal history would come into evidence if he testified and that he had "no obligation to present any defense, including [his] own testimony." (D.I. 30-7 at 101.)  Petitioner stated that he wished to testify, and that no one had "forced [him] to make this decision to testify today." (*Id.*)

The record belies Petitioner's current assertion that he felt forced to testify due to trial counsel's strategy for cross-examining Doherty and Irwin.  The Delaware state courts reasonably applied *Strickland* in concluding Petitioner failed to demonstrate prejudice under *Strickland*.  Accordingly, the Court will deny Claim Thirteen.

### C. Claim One (a): Prosecutorial Misconduct by not Correcting Cell Phone Expert's False Testimony

In Claim One (a), Petitioner contends that the State engaged in prosecutorial misconduct and violated his due process rights by not correcting the allegedly false testimony offered by its expert cell phone and tower expert, Special Investigator Brian Daly. (D.I. 2 at 21-26; D.I. 8-1 at

21-26.)  Petitioner presented a substantially similar argument in his Rule 61 motion, which the Superior Court denied as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise the issue during trial or on direct appeal.  *See Abbatiello*, 2020 WL 1847477, at \*3.  The Delaware Supreme Court affirmed that decision.  *See Abbatiello*, 2020 WL 7647926, at \*3.

It is well-settled that Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause for the default, and resulting prejudice, or that a miscarriage of justice will occur if the claim is not reviewed.  *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998).  By expressly applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds.  Thus, the Court cannot review the merits of Claim One (a) absent a showing of cause for the default, and resulting prejudice, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

Petitioner asserts appellate counsel's failure to raise Claim One (a) as cause for his default.  But as explained above, appellate counsel did not provide ineffective assistance by failing to raise the instant prosecutorial misconduct argument on direct appeal.  *See supra* at Section III.B.1.  Petitioner does not assert any other reason for his failure to exhaust state remedies for Claim One (a).  Therefore, he has not established cause for his default.

Absent cause, the Court need not address the issue of prejudice.  The Court also concludes that the miscarriage of justice exception does not excuse Petitioner's default, because he has not provided new reliable evidence of his actual innocence.

Thus, the Court will deny Claim One (a) as procedurally barred.

**E.  Claims Two and Four: Prosecutorial Misconduct for Introducing False Evidence Concerning Call Detail Records and *Brady* Violation for Suppressing Call Detail Records**

In Claim Two, Petitioner contends that the State violated his due process rights by presenting false evidence when it asserted that the call detail records related to his cell phone number were certified.  (D.I. 2 at 27; D.I. 8-1 at 27.)  Petitioner asserts that T-Mobile only certified the call detail records from May 9 to May 14, 2014, and he alleges that there is another set of cell phone records with conflicting information.  (D.I. 8-1 at 30.)  He contends that the State "intentionally falsified [Petitioner's] records in order to prevent the defense from discovering a *Brady* violation and stop [Petitioner] from proving his innocence." (*Id.*)  Relatedly, in Claim Four, Petitioner contends that the State violated his due process rights under *Brady* by "suppressing sections of [his call detail records] and misleading the defense."  (D.I. 2 at 34; D.I. 8-1 at 34.)

Petitioner raised substantially similar arguments his Rule 61 motion and in a motion to compel cell phone records.  (D.I. 30-26 at 10–13.)  *See Abbatiello*, 2020 WL 1847477, at *1.  The Superior Court determined that Petitioner "failed to show there were missing sections to the call detail record for his phone," and held that the "requested evidence" in the motion to compel related to  arguments that were procedurally barred  *Abbatiello*, 2020 WL 1847477, at *3.   On postconviction appeal, Petitioner argued that the State "committed misconduct by intentionally presenting false evidence, in violation of the petitioner's [Fourteenth A]mendment right under the United States Constitution."  (D.I. 30-20 at 43.)  He also argued that the "prosecution committed misconduct by suppressing sections of [the call detail records] and misleading the defense."  (D.I. 30-20 at 55.)  The Delaware Supreme Court found that Petitioner had framed his arguments "relating to the cell phone records" as prosecutorial misconduct claims that were procedurally

barred under Rule 61(3) because Petitioner "could have raised [the] claims in the proceedings leading to his conviction." *Abbatiello*, 2020 WL 7647926, at *3.

Given the Delaware Supreme Court's application of Rule 61(i)(3) to the instant prosecutorial misconduct and *Brady* arguments, the Court cannot review the merits of Claims Two and Four unless Petitioner shows cause and prejudice, or a miscarriage of justice.

With respect to Claim Two, Petitioner asserts that he was unaware of the alleged discrepancy with the certification of records until he was sent a copy of the record after filing his Rule 61 motion. To the extent Petitioner is attempting to establish cause by blaming trial counsel for not discovering and raising the issue of the alleged "missing records" during the trial, it is unavailing. The Court has determined that trial counsel did not perform ineffectively by failing to "investigate" the cell phone records. *See* Section III.B.2. To the extent Petitioner attempts to establish cause by asserting that the discrepancy is "newly discovered," the attempt is unavailing because he has not shown that a discrepancy actually exists.

As for Claim Four, a petitioner establishes a *Brady* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Lambert*, 387 F.3d at 252. In *Banks v. Dretke*, 540 U.S. 668 (2004), the Supreme Court explained that two of the three elements of a substantive *Brady* claim mirror the cause and prejudice inquiry for a procedural default, and proof of one is necessarily proof of the other. *Id.* at 691. In the context of a *Brady* claim, the suppression of evidence by the State would be adequate "cause," while the non-disclosure of "material" evidence would demonstrate "prejudice." *See id.* Evidence is material if there is "a reasonable probability of a different result" or if "the government's evidentiary

suppression undermines confidence in the outcome of the trial." *Id.*  Petitioner has not established cause for his procedural default of Claim Four, because he has not demonstrated, and nothing in the records indicates, that the State suppressed another version of his call detail records.

Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice.  The miscarriage of justice exception also does not excuse Petitioner's default because he has not provided new reliable evidence of his actual innocence.

Accordingly, the Court will deny Claims Two and Four.

### F.  Claims Seven and Eight:  *Brady* Violation for Suppressing Jamison's Criminal History and Prosecutorial Misconduct for not Correcting Jamison's False Testimony

In Claim Seven, Petitioner contends that the State "committed misconduct by suppressing Jamison's New Jersey [criminal] history preventing the defense from conducting a meaningful cross examination."  (D.I. 2 at 41; D.I. 8-1 at 41.)  In Claim Eight, Petitioner contends that the State "committed misconduct by failing to correct Jamison's testimony which [it] either knew or should have known was false" in violation of his due process rights.  (D.I. 2 at 46; D.I. 8-1 at 46.)  Petitioner appears to assert that Jamison's "false testimony" is that he did not testify about his conviction for attempted assault and conspiracy.

The Delaware state courts denied both Claims as procedurally barred by Rule 61(i)(3).  *See Abbatiello*, 2020 WL 1847477, at *3; *Abbatiello*, 2020 WL 7647926, *3.  Petitioner attempts to establish cause for his default of both Claims by blaming the State's alleged suppression of Jamison's criminal history.  But the record shows that the State provided Jamison's criminal record to the defense during Petitioner's trial.  (*See* D.I. 30-34 at 49.)

There has been no showing of cause, so the Court will not address the issue of prejudice. Additionally, Petitioner's failure to provide new reliable evidence of his actual innocence precludes excusing his default under the miscarriage of justice exception.

Accordingly, the Court will deny Claims Seven and Eight as procedurally barred.

### G. Claim Ten (a): Prosecutorial Misconduct for Not Correcting Doherty's Testimony

In Claim Ten (a), Petitioner contends that the State committed misconduct by presenting false evidence when it failed to correct Doherty's false testimony about Weston's statement regarding Petitioner's tattoos. (D.I. 2 at 52; D.I. 8-1 at 52.) The Claim is procedurally defaulted because the Delaware state courts held that it was barred by Rule 61(i)(3). Petitioner's attempt to establish cause by blaming appellate counsel's failure to raise the issue on direct appeal is unavailing, because the Court has concluded that appellate counsel did not provide ineffective assistance by not raising the issue of Doherty's testimony on direct appeal. *See supra* at Section III.5. Petitioner's default is not excused under the miscarriage of justice exception because he has not provided new reliable evidence of his actual innocence. Thus, the Court will deny Claim Ten (a) as procedurally barred.

### H. Claim Fourteen: Cumulative Error

In his final Claim, Petitioner asserts that the above cumulative errors compromised his right to due process. (D.I. 2 at 68; D.I. 8-1 at 68.) The Delaware Supreme Court rejected Petitioner's cumulative error argument as meritless, because it "found no errors that caused actual prejudice." *Abbatiello*, 2020 WL 7647926, at *6. Under these circumstances, Petitioner will only be entitled to relief if the Delaware Supreme Court's decision was based on an unreasonable determination of facts or constituted an unreasonable application of clearly established federal law.

The Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014). Under the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008).

As discussed above, this Court has concluded that Petitioner's Claims either lack merit or are procedurally barred. Petitioner has not provided anything to demonstrate "actual prejudice" even when all the Claims are considered together. Therefore, the Court will deny Claim Fourteen as meritless.

## I. Motion for Discovery

During the pendency of this proceeding, Petitioner filed a second Motion for Discovery, asking the Court to compel (1) the State to "turn over all emails between them, the DSP, T-Mobile, and vice versa along with activity logs to determine whether or not they are withholding material evidence relating to" the issue of why the calls he placed to Cuculino did not register on his call detail record, and (2) T-Mobile to provide a certified call detail record or any other information relating to Petitioner's former cell phone number. (D.I. 56 at 6.) Finding the record to contain sufficient facts without additional discovery, the Court concluded that the instant Petition must be denied because the Claims therein are either meritless or procedurally barred. Therefore, the Court dismissed the Motion for Discovery. (D.I. 57.)

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court need not issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 484.  As the Court has concluded, the Petition does not warrant relief.  In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing or issuing a certificate of appealability.  An appropriate Order will be entered.